IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE CRAIG<br>and JAMES CRAIG, | : | CIVIL ACTION<br>NO. 06-5503 |
| Plaintiffs, | : | |
| v. | : | |
| FRANKLIN MILLS ASSOCIATES,<br>L.P. et al., | : | |
| Defendants. | : | |



M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              MAY 23, 2008

I.  BACKGROUND

Plaintiff Christine Craig slipped and fell in a puddle of soda while walking with her daughter-in-law, Kristina Craig, through the mall at Franklin Mills, allegedly sustaining serious injuries as a result. Christine and her husband, James Craig, brought suit in the Philadelphia Court of Common Pleas for negligence and loss of consortium against Defendants, Franklin Mills Associates L.P. ("Mills"), the company that owned and operated the mall, and Control Building Services, Inc. ("Control"), the janitorial company that cleaned the mall pursuant to its contract with Mills.[1] The case was removed to this Court on December 16, 2006.

_____

[1] Another Defendant named in the complaint, The Mills Corp., was dismissed by stipulation of the parties (doc. no. 59).

Presently before the Court are Defendants Control and Mills' motions for summary judgment.[2] For the reasons that follow, the motions will be granted.

II. DISCUSSION

A. Legal Standard

A court must grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

---

[2] On November 13, 2007, Control filed a motion for summary judgment (doc. no. 32). On the same day, Mills filed a motion joining Control's motion (doc. no. 33). Mills has asserted a cross-claim against Control, which is not pertinent to the issues before the Court.

2

B.  Negligence and Premises Liability

Under Pennsylvania law,[3] a claim for negligence requires proof of four elements:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law).  The sole issue at this stage of the proceedings is whether, and to what extent, Defendants owed a duty to Christine Craig.

1.  Duty of care: possessor of land

Mills, as owner and operator of the mall at Franklin Mills, was the possessor of the land on which Christine Craig allegedly sustained injuries.  Pennsylvania courts have adopted the Second Restatement approach to determining the duty owed by a possessor of land to a person on his land.  See Kirschbaum v. WRGSB Assocs., 243 F.3d 145, 152 (3d Cir. 2001) (citing Carrender v. Fitterer, 469 A.2d 120, 123 (1983)).  Under this approach, "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is

---

[3]  Pennsylvania law applies in this diversity action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 80 (1938).

a trespassor, licensee, or invitee." Carrender, 469 A.2d at 123.

During the time that Christine Craig was shopping in the Franklin Mills Mall, she was an "invitee." See Restatement (Second) of Torts § 332 (defining an "invitee" to include "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land"). "Possessors of land owe a duty to protect invitees from foreseeable harm." Carrender, 469 A.2d at 123. The Restatement clarifies that a duty is owed only when the possessor "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee." Restatement (Second) of Torts § 343. In other words, the possessor of the land must have "'actual or constructive notice'" of the dangerous condition. Estate of Swift v. Ne. Hosp., 690 A.2d 719, 723 (Pa. Super. Ct. 1997) (quoting Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593, 598 (Pa. 1980)).

### 2. Duty of care: independent contractor

Pursuant to a contract with Mills, Control was responsible for maintenance of the mall at Franklin Mills. As such, Control was an independent contractor. The Pennsylvania Supreme Court has adopted section 383 of the Second Restatement, which states:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability . . . for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

Restatement (Second) of Torts § 383; see Felger v. Duquesne Light Co., 273 A.2d 738, 741-42 (Pa. 1971) (adopting § 383 and holding that "because Duquesne Light had an easement and was required to maintain the pole, it should be held to the same liability as a possessor in this case"). The commentary to the Restatement clarifies that "[o]ne acting on behalf of the possessor may do so as . . . . an independent contractor." Restatement (Second) Torts § 383 cmt. a. Thus, if any duty is owed by Mills, Control will be held to the same standard, because Control acted on behalf of Mills as an independent contractor.

In sum, both Mills, as a possessor of land, and Control, as an independent contractor acting on behalf of Mills, owed a duty of care to Christine Craig, who was a business invitee on Mills' land. However, Defendants only owed such a duty to Christine, to the extent that they had "actual or constructive notice" of a dangerous condition on the land.

    3.   Notice

In this case, there is no evidence that Defendants either caused the soda spill or had actual notice of the spill. Summary judgment thus turns on the issue of constructive notice.

5

Courts rely on a multitude of factors to determine constructive notice, including: "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." Hagan v. Caldor Dep't Stores, Inc., No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991).

"[O]ne of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. Ct. 2001). The duration of the hazard is important because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even "by the exercise of reasonable care," would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard. Restatement (Second) of Torts § 343.

Normally, the "evaluation of these factors is within the province of the jury." Id. However, where the evidence adduced requires the jury to resort to "conjecture, guess or suspicion," the determination must be made by the Court. Lanni v. Pa. R.R. Co., 88 A.2d 887, 889 (Pa. 1952).

C. <u>Constructive Notice: Sufficiency of the Evidence</u>

Plaintiffs have pointed to evidence relating to two of the above-mentioned factors: the location of the spill and the duration of the spill.

1. <u>Location of the spill</u>

It is undisputed that the spill occurred in a central area of the mall. <u>See</u> Pls' Resp. to Mot. for Summ. J., Ex. D [hereinafter "Incident Report"], at 2 (stating that spill occurred in front of a jewelry store in the main shopping area).

The central location of the spill indicates that defendants should have discovered the spill with reasonable diligence in a relatively short period of time; in other words, the duration of the spill required to put Defendants on constructive notice is more likely a matter of minutes than a matter of hours.

2. <u>Duration of the spill</u>

Under the facts of this case, the location of the spill alone does not create a genuine issue of material fact as to whether Defendants were on constructive notice. Sufficient evidence of the duration of the spill must also be offered.

Plaintiffs point to three facts to support their assertion that the soda on which Christine slipped had been

7

spilled for a duration sufficient to provide Defendants with constructive notice: 1) Kristina's deposition testimony that the soda looked "thinned out" after Christine had fallen in it; 2) the mall security incident report stating that there was "a trail of soda around where [Christine] fell"; and 3) Kristina's deposition testimony that the spilled soda had lost "carbonation" and was not "fizzing" immediately after the fall.  Plaintiffs argue that these three facts render this case analogous to other cases in which similar claims have survived summary judgment.

As may be expected, this issue has received considerable attention from Pennsylvania courts.  Unfortunately for Plaintiffs, the case law does not impose a duty on Defendants under the circumstances of this case.

> a. The wilted lettuce cases

Plaintiffs rely primarily on two cases, both involving a customer who slipped and fell on wilted, brown lettuce that had been spilled.  See Kania v. Sbarro, Inc., No. 97-6863, 1998 WL 800320 (E.D. Pa. Nov. 13, 1998); Rumsey v. Great Atl. & Pac. Tea Co., 408 F.2d 89 (3d Cir. 1969).  These cases turned on the issue of constructive notice; that is, whether the lettuce spill had existed for a sufficient duration to put the store owners on notice that a hazard existed.

In Kania, the court denied a motion for summary

8

judgment and held that a sufficient showing of constructive notice had been made. 1998 WL 800320, at *2. The Court relied on three pieces of evidence. First, the store manager "was required to inspect the floor every five to ten minutes," suggesting that "the defendant knew of the likelihood food would be dropped on its floor." Id. Second, the lettuce spill occurred in a central area of the store, "near the food buffet," rather than a remote area, which suggested that the hazard was not too obscure to be found upon a reasonable inspection. Id. at *1. Finally, and most relevant here, the customer testified "that the lettuce was slightly brown in color," which indicated that "it had been on the floor for a sufficient period of time that defendant reasonably should have discovered it." Id. at *3.

Similarly, in Rumsey, the Third Circuit found that a sufficiently strong showing of constructive notice had been made to allow the jury to decide the issue. 408 F.2d at 91. As in Kania, the spill occurred in an area of the store with a high amount of traffic, near a display of groceries. Id. at 90. More importantly, the plaintiff testified that immediately after the fall, she noticed that the lettuce on which she had slipped was "brown," "yellow," "torn up," and looked "old." Id. The court held that, "from the wilting and discoloration, a reasonable person could infer that [the lettuce] had been on the floor for hours," and that since "it is very unlikely that one would tear

9

or break a lettuce leaf into such small pieces before dropping it . . . [i]t is more likely that the fragmentation resulted from exposure to traffic over a period of time." Id. at 90-91.

In both Kania and Rumsey, the courts found that, in addition to location, there was sufficient circumstantial evidence of the duration of the spill, from which a jury could conclude that the defendants had constructive notice of the spill.[4] Here, in contrast, Plaintiffs have not pointed to circumstantial evidence of the duration of the spill. Unlike the "brown" and "torn" lettuce in Kania and Rumsey, and as discussed below, the evidence offered by Plaintiffs--the thinning of the soda, the trail of soda, and the loss of carbonation--does not suggest that the spill had existed for any particular duration of time, let alone a duration of time sufficient to put Defendants on notice that a hazard existed.

i.  Thinned-out soda

Christine fell while she was walking alongside her daughter-in-law, Kristina. Kristina testified at her deposition

---

[4] In reaching this conclusion, it appears that the courts in Kania and Rumsey may have relied on the assumption that only fresh lettuce would be on display in a store. In other words, the lettuce did not become wilted and brown in the display and then spill onto the floor, because the store would not allow wilted, brown lettuce to remain in the display. Rather, the jury could infer from the wilting and discoloration of the lettuce that the lettuce had been spilled and had been on the floor for a sufficient duration to become wilted and brown.

that immediately after the fall, she noticed that the spilled liquid looked "thinned out," "like it had been there a little while just because, you know, it was like kind of spread out towards the bottom." K. Craig Dep. 27:12-17, 39:22-24.

The thinning of the spilled soda, unlike the browning of the lettuce in Kania and Rumsey, is not evidence of the duration of the spill. It is equally likely that the thinning and spreading out of the liquid happened many minutes before the fall occurred or merely several seconds before the fall occurred. It is also equally probable that the spreading of the liquid was caused by the impact of Christine's fall. Plaintiffs have pointed to no additional evidence to guide the jury, leaving them to "conjecture, guess or suspicion." Lanni, 88 A.2d at 889; see, e.g., Saldana v. Kmart Corp., 260 F.3d 228, 235 (3d Cir. 2001) (post-fall showing of dust accumulation on wax spill insufficient because plaintiff "offered no evidence of how much dust was found, how long it would have taken for dust to accumulate, or whether the dust was picked up off the floor by the spreading wax or the force of [the] fall").

### ii. Trail of soda

The incident report written by mall security states that "there was a trail of soda all around where [Christine] fell." Incident Report at 2. In addition, Kristina opined that

11

the puddle looked like someone had "walked through it," although she did not "notice any footprints" or "dirt" in or around the puddle, other than two "scuff marks," which she thought were made by Christine's shoes. K. Craig Dep. 39:11-16, 40:1-41:1.

  Plaintiff suggests that this evidence shows that the soda spill existed on the floor for a long enough time such that passersby walked through it. However, the incident report and Kristina's testimony are evidence of the condition of the spill <u>after</u> Christine's fall, not before it. Therefore, there is no way for the jury to discern whether the "trail of soda" was caused by another person prior to Christine's fall or by the impact of the fall itself. See <u>Viccharelli v. Home Depot U.S.A., Inc.</u>, No. 06-4890, 2007 WL 4276657, at *3 (E.D. Pa. Dec. 4, 2007) ("[T]he presence of 'skid marks' suggests only that something had been pushed through the wet substance at one point in the past. It does not suggest, however, that the wet substance had been present for any length of time, much less that Home Depot personnel should have noticed it upon reasonable inspection."). Kristina's testimony that there were no footprints or dirt near the spill provides no further guidance to the jury, and, if anything, suggests a lack of passersby walking through the spill. See <u>Kujawski v. Wal-Mart Stores, Inc.</u>, No. 06-4120, 2007 WL 2791838, at *4 (E.D. Pa. Sept. 25, 2007) (plaintiff's post-fall recollection of one set of "scuff marks" in addition to "slide

12

mark" made by her when she fell in puddle of baby oil was insufficient to show constructive notice because there were no other "footprints or cart tracks through the puddle, there was no dirt in the puddle, and the puddle was still wet").

### iii. Loss of carbonation

Kristina testified that the liquid on which Christine slipped was "soda," which Christine confirmed, although she had some doubt as to whether it was "soda or coffee." K. Craig Dep. 26:22; C. Craig Dep. 38:3-7, June 22, 2007. Kristina further stated that the spilled soda had lost its "carbonation" and was no longer "fizzing." K. Craig Dep. 39:6-10. Plaintiffs argue that this evidence, like the browning of the lettuce in Kania and Rumsey, indicates that the spill had existed for some duration, arguing that if the soda had been spilled immediately prior to the slip and fall, it would have retained some carbonation, which Kristina would have noticed upon viewing the puddle immediately after the fall.

The parties have cited no Pennsylvania or federal case which discusses whether a loss of carbonation in spilled soda is sufficient evidence to permit a jury to decide the question of constructive notice, and the Court finds none. The closest case is one discussed by the Third Circuit in dicta:

> Saldana cites Rhoades v. K-Mart, 863 P.2d 626 (Wyo. 1993) for the proposition that whether a slippery

13

> substance was on the floor and how long it had been there are questions for the jury to determine. The Rhoades Court noted, however, that <u>the soda cup lid and straw found at the scene were dry, which would permit an inference that the soda had been on the floor a sufficient length of time for constructive notice</u>.

<u>Saldana</u>, 260 F.3d at 235 n.4 (emphasis added).

This case is distinguishable from <u>Rhoades</u>. Here, the spilled soda had not dried, but rather had merely lost its carbonation, i.e., gone flat. A jury can infer from a dried puddle of soda that a spill has existed for a certain duration because the soda would not dry inside a bottle or cup, but rather only after it was spilled. Here, although it is possible that the soda was spilled and lost its carbonation while sitting on the floor for many minutes, it is equally likely that the soda had lost its carbonation while sitting in a cup or open bottle, even <u>before</u> it had spilled, or perhaps seconds after it had spilled. No additional evidence has been offered to guide the jury beyond conjecture.[5]

A similar showing was rejected as insufficient by the Pennsylvania Supreme Court in <u>Lanni</u>, 88 A.2d 887. In that case, a person had slipped on a grease spot and noticed after falling that the spot was "covered with dust or dirt." <u>Id.</u> at 889. The Court held that the settling of dust or dirt was insufficient evidence to allow the issue to go to the jury, holding that "it

---

[5] The origin of the soda spill is not indicated by any evidence in the record.

14

could not be determined from any or all of the circumstances and at best it would only be a guess whether the grease spot was on the driveway 10 minutes, 10 hours or 10 days prior to plaintiff's accident." Id.

In sum, Kania and Rumsey are distinguishable from this case because Plaintiffs have offered no evidence of the duration of the spill.

### b. Prior notice cases

The remaining slip-and-fall cases relied on by Plaintiffs are also distinguishable. Plaintiffs rely on cases where a showing of constructive notice was made through direct evidence of the duration of the hazard, such as an eyewitness testifying to seeing the hazard some time <u>before</u> the fall occurred. See David by Berkely v. Pueblo Supermarket, 740 F.2d 230, 233, 236 (3d Cir. 1984) (constructive notice shown through witness statement that she had seen the same spill on which the plaintiff slipped "about an hour and a half ago"); Katz v. John Wanamaker Phila., Inc., 112 A.2d 65, 66 (Pa. 1955) (constructive notice shown through statement that stairs "were very wet and [had] a lot of mud on them" for "about an hour"). Here, no such direct evidence of the duration of the spill was presented.

Plaintiffs also rely on cases where a showing of constructive notice was made by using circumstantial evidence

15

obtained <u>before</u> the fall occurred suggesting that the hazard existed before the time of the fall. In <u>Ryan v. Super Fresh Food Markets, Inc.</u>, No. 99-1047, 2000 WL 537402 (E.D. Pa. Apr. 26, 2000), the Court denied a summary judgment motion based on plaintiff's testimony that she neither saw nor heard a spill during the 15-minute conversation she had prior to falling in the same area. <u>Id.</u> at *2-3; <u>see also</u> <u>Davanti v. Hummell</u>, 185 A.2d 554, 555-56 (Pa. 1962) (constructive notice shown through 45-minute bowling session immediately prior to fall in bowling lane during which no spills occurred). Here, Plaintiffs have offered no testimony from anyone who had been present in the area of the spill for any amount of time prior to the time of the fall.

      c.   <u>Non-transitory hazard cases</u>

Plaintiffs additionally rely on cases where the enduring nature of the hazardous condition was itself evidence that the hazard existed for a duration sufficient to put the premises owners on constructive notice. In these cases, even though nobody noticed the hazardous condition until after the fall occurred, the defendant could be "charged with notice . . . because of the durability of the condition." <u>Neve v. Insalaco's</u>, 771 A.2d 786, 790-91 (Pa. Super. Ct. 2001). For example, in <u>Neve</u>, the Court found that a raised metal grate was "a more durable defect than a spill or piece of fruit on the floor" and

thus was itself sufficient circumstantial evidence to show that the defendant was on constructive notice. Id.

These cases are distinguishable as well, because here the hazardous condition was not an enduring one, but rather "temporary in nature," requiring additional "proof that it has existed for a sufficient length of time to permit the inference that reasonable care would have led to its discovery." Restatement (Second) of Torts § 343 reporter's note.

>
> d.  Cases where no evidence of the
>     duration of the spill was offered

Plaintiffs' evidence has shown only that a liquid substance was spilled in the mall, and that the spill existed for some indeterminate time before Christine slipped on it. There is no evidence of the duration of time that the spill existed.

Claims supported by such scant evidence have been dismissed in overwhelming numbers at the summary judgment stage. See, e.g., Swift v. N.E. Hosp. of Phila., 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (affirming grant of summary judgment where evidence showed that water was spilled but not "how long the condition existed"); Read v. Sam's Club, No. 05-170, 2005 WL 2346112, at *4 (E.D. Pa. Sept. 23, 2005) ("[P]laintiff has failed to put forth any evidence as to the origin of the spill or as to how long the spill was on the floor prior to plaintiff's accident. These evidentiary deficiencies are fatal to

17

plaintiff's claim under § 343 of the Restatement (Second) of Torts."); Myers v. Penn Traffic Co., 606 A.2d 926, 931 (Pa. Super. Ct. 1992) (affirming grant of summary judgment as to spilled-grape claim); D'Aprile v. Rolling Hill Hosp., 28 Pa. D. & C. 4th 430, 435 (Pa. C.P. 1995) (granting summary judgment as to spilled-water claim); Dimino v. Wal-Mart Stores Inc., 83 Pa. D. & C. 4th 169, 178 (Pa. C.P. 2007) (granting summary judgment as to spilled-oil claim); Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593, 598 (Pa. Super. Ct. 1980) (affirming grant of compulsory non-suit as to spilled-cherry claim); Evans v. Canteen Corp., No. 94-2381, 1995 WL 355231, at *3 (E.D. Pa. June 13, 1995) (granting summary judgment as to spilled-milk claim).

Here as well, the jury can only guess how long the hazardous condition caused by the soda spill existed before Christine slipped on it. Under such circumstances, the jury cannot be permitted to render a verdict based on "conjecture, guess or suspicion," and the determination must be made by the Court. Lanni, 88 A.2d at 889.

Accordingly, the motion for summary judgment will be granted as to Christine Craig's negligence claim. No genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law because Plaintiffs have failed to demonstrate that Defendants had constructive notice of the spill on which Christine slipped.

18

D.   Loss of Consortium

Under Pennsylvania law, a claimant may recover for loss of consortium stemming from tortious physical injury to his or her spouse. Darr Constr. Co. v. Workmen's Comp. Appeals Bd., 715 A.2d 1075, 1079-80 (Pa. Commw. Ct. 1996). If the underlying negligence claim brought by the claimant's spouse is dismissed, however, the loss of consortium claim must also be dismissed. Brown v. Peoples Sec. Ins., 890 F. Supp. 411, 416 (E.D. Pa. 1995). Accordingly, the motion for summary judgment will be granted as to James Craig's claim for loss of consortium.

III. CONCLUSION

The motions for summary judgment filed by Defendants Control Building Services (doc. no. 32) and Franklin Mills Associates, L.P. (doc. no. 33) will be granted.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE CRAIG and JAMES CRAIG, | : | CIVIL ACTION NO. 06-5503 |
| Plaintiffs, | : | |
| v. | : | |
| FRANKLIN MILLS ASSOCIATES, L.P. et al., | : | |
| Defendants. | : | |

### O R D E R

**AND NOW,** this **23rd** day of **May, 2008,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that the motion for summary judgment filed by Defendant Control Building Services (doc. no. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by Defendant Franklin Mills Associates, L.P. (doc. no. 33) is **GRANTED**.

**AND IT IS SO ORDERED.**

_____
**EDUARDO C. ROBRENO, J.**